UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER LOMBARDI, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-11-4007 |
| | § | |
| SEDGWICK CLAIMS MANAGEMENT | § | |
| SERVICES, INC. ADMINISTRATOR OF | § | |
| THE HEWLETT-PACKARD COMPANY | § | |
| DISABILITY PLAN, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

## I.      INTRODUCTION

Pending before the Court is the plaintiff's, Christopher Lombardi ("Lombardi"), motion for summary judgment (Docket No. 16) and the defendant's, Sedgwick Claims Management Services, Inc. ("Sedgwick"), response (Docket No. 22). Also before the Court is Sedgwick's motion for summary judgment (Docket No. 17). Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby GRANTS Sedgwick's motion for summary judgment and denies Lombardi's motion as moot.

## II.     FACTUAL BACKGROUND

Christopher Lombardi has filed suit pursuant to the Employee Retirement Income Security Act ("ERISA"), alleging that Sedgwick, which is the Claims Administrator of the Hewlett-Packard Company long-term disability plan (the "Plan"), improperly denied him long-term disability benefits. Sedgwick has filed a counterclaim, arguing that it is entitled to "equitable restitution" from Lombardi for disability benefits that he was overpaid.

**The Plaintiff's Claim that He Was Improperly Denied Long-Term Disability Benefits**.

Christopher Lombardi worked for over thirteen years as a project manager at the Hewlett-Packard Company ("Hewlett-Packard").  He alleges that he became disabled in April of 2008 because he suffered from bipolar disorder, schizophrenia, chronic fatigue, diabetic neuropathy, memory loss, sleep issues, fibromyalgia, depression, vision problems, high blood pressure, and sensitivity to sunlight.  He filed for and was granted short term disability benefits.  Subsequently, he applied for long-term benefits with the Plan, which were approved with an effective date of December 1, 2008.[1]  On December 7, 2009, Sedgwick informed Lombardi that his initial 24-month period of disability would end on June 2, 2010, and that Sedgwick would review his claim at that time to determine whether he was "totally disabled" and would continue receiving long-term benefits beyond the initial 24-month period.

On August 20, 2010, Sedgwick notified Lombardi that, after reviewing his medical records and documentation, it determined that he did not qualify for continued long-term benefits because he did not meet the definition of "Total Disability."  Sedgwick noted that "total disability" under the Plan meant that, "following the initial twenty-four (24) month period after onset of the injury or sickness, the Participant is continuously unable to perform any occupation for which he is or may become qualified by reason of his education, training or experience."  Sedgwick also noted that a finding of total disability had to be based on objective medical evidence and the Plan specifically excluded attention deficit disorder, chronic fatigue syndrome, fibromyalgia, and nervous and mental disorders.  Sedgwick concluded that, given the specific exclusions under the Plan, Lombardi's complaints of bipolar disorder, depression, fibromyalgia,

---

[1]The Social Security Administration ("SSA") also approved Lombardi's claim for Social Security benefits beginning in December of 2008.

and chronic fatigue syndrome were disregarded in determining his eligibility for benefits beyond the initial 24-month period. Sedgwick also informed Lombardi that the medical records established that his diabetes and high blood pressure were effectively controlled with medication, his photosensitivity complaints were subjective in nature, and his eye pain and sensitivity could not be linked to any objective medical evidence. Therefore, Sedgwick denied Lombardi continued long-term disability benefits and informed him of his right to appeal.

Lombardi appealed Sedgwick's decision in December of 2010, and provided an assessment report from his treating physician.  In the report, Lombardi's physician asserted, among other things, that he suffered from schizophrenia,[2] dissociative episodes, diabetes, and chronic pain.  The physician recommended that Lombardi continue on long term disability due to his limited ability to get along with others, his dissociative episodes, daily suicidal ideations, sadness, severe body aches, and poor concentration.  In a March 17, 2007, letter, Sedgwick denied Lombardi's appeal. Sedgwick informed Lombardi that his file was reviewed by Doctor Robert Petrie, an independent board-certified specialist in Occupational and Environmental Medicine, and Dr. Petrie found "no conditions of such severity to have precluded" Lombardi from functioning in any occupation as of June 2, 2010.  Subsequent to the appeal, Sedgwick obtained an independent evaluation from Dr. Marcus Goldman, a board-certified psychiatrist. Then, in a supplemental report issued on June 8, 2012, Sedgwick upheld the denial of benefits, noting that the independent findings of Drs. Petrie and Goldman established that Lombardi was not disabled from either a psychiatric or physical perspective.

---

[2]Schizophrenia is not one of the listed conditions that is excluded under the Plan.

**The Defendant's Counterclaim**

Sedgwick, in its counterclaim, alleges that it is entitled to "equitable restitution" because Lombardi failed to reimburse it for benefits that he was overpaid.  According to Sedgwick, the Plan provides that a participant's benefits shall be reduced by any benefit payable to the participant from certain other agencies, including the SSA. Sedgwick claims that Lombardi signed a contractual Right of Reimbursement form on June 6, 2008, in which he acknowledged that the Plan may require his employer to "collect any duplicate payments" that he receives from different sources for the same illness.  Sedgwick alleges that Lombardi also signed a contractual "Promise to Repay" agreement on October 30, 2008, whereby he acknowledged that disability payments under the Plan will be reduced by any amounts which he was paid by the SSA.

According to Sedgwick, the SSA approved Lombardi's claim for benefits beginning in December of 2008 because it found that he met the disability standards on account of "[m]ajor depressive disorder [without] psychotic features."  Based on the approval of Lombardi's claim for Social Security benefits and pursuant to the terms of the Plan, Sedgwick alleges that it recalculated the full amount of benefits due to Lombardi under the Plan to offset the benefits he received from the SSA.  Sedgwick claims that it sent letters notifying Lombardi that, as a result of his receipt of Social Security benefits, Sedgwick had overpaid him benefits, and requesting full reimbursement of the overpaid amount.  Sedgwick contends that after Lombardi failed to reimburse the overpayment, it sent three additional letters requesting reimbursement in the amount of $13,327.41 to no avail.

### III.  CONTENTIONS OF THE PARTIES

#### A.  Lombardi's Contentions

Christopher Lombardi argues that Sedgwick's decision to deny him long-term disability benefits under the Plan was not supported by substantial evidence and was arbitrary and capricious because a report from his physician established that he could not perform the duties of his own occupation or of any other occupation due to his schizophrenia and other physical and mental limitations.  He claims that Sedgwick deprived him of a full and fair review by failing to fully consider his treating physician's opinion and by improperly relying on reviews conducted by physicians who did not examine him.  He also contends that Sedgwick should have conducted an independent medical examination instead of relying on paper reviews of his medical records. Lombardi argues that the definition of "disabled" is similar under the Plan and the SSA and since the latter found him disabled, Sedgwick should have also found him disabled.  Lombardi further argues that Sedgwick's failure to address the determination of the SSA suggests a procedural unreasonableness in Sedgwick's decision.  Moreover, he claims that, even though Sedgwick is a third-party claims administrator for Hewlett-Packard, there is a conflict of interest because the company may have influenced Sedgwick's decision-making process.

#### B.  Sedgwick's Contentions

Sedgwick argues that because it has discretionary authority to determine eligibility under the Plan, its determination to deny Lombardi long-term benefits must be reviewed under an abuse of discretion standard and can be reversed only if it was arbitrary and capricious. Sedgwick contends that its determination that Lombardi was not totally disabled is also supported by substantial evidence.  According to Sedgwick, many of the diagnoses upon which Lombardi claims long-term disability, such as bipolar disorder, chronic fatigue syndrome,

fibromyalgia, and depression are specifically excluded from the Plan.  Sedgwick notes that it examined medical records for Lombardi going back to 2005 and, in addition, it retained the services of two independent physicians to examine the records, but the review revealed no objective evidence that Lombardi's alleged schizophrenia and other physical or mental conditions rendered him "totally disabled."  Sedgwick argues that it was not required to give greater authority to the opinion of Lombardi's psychiatrist and it did not "arbitrarily refuse" to consider the psychiatrist's opinion.  Sedgwick further contends that there is no conflict of interest because Hewlett-Packard as the entity that funds benefit claims is distinct and apart from Sedgwick, which merely processes and reviews claims.  Lastly, Sedgwick argues that it should prevail on its counterclaim because the undisputed facts show that Lombardi was overpaid benefits, for which he has failed to reimburse Sedgwick.

## IV.    SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56 (c).  "The [movant] bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact."  *Lynch Props., Inc. v. Potomac Ins. Co*., 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 322–25 (1986).  Once the movant carries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate.  *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).  The nonmovant must go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  The

nonmovant may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. FED. R. CIV. P. 56(e). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625. "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs*., 373 F.3d 647, 651 (5th Cir. 2004). Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251–52).

## V.    ANALYSIS AND DISCUSSION

The Court finds that Sedgwick's determination to deny Christopher Lombardi long-term disability benefits under the Plan is supported by substantial evidence; therefore, the decision to deny benefits was not an abuse of discretion. The Court is also of the opinion that there is no genuine issue of material fact regarding Sedgwick's counterclaim that Lombardi failed to reimburse overpaid benefits. Accordingly, the Court grants Sedgwick's motion for summary judgment and denies Lombardi's motion as moot.[3]

---

[3]Lombardi has failed to respond to Sedgwick's motion and the time for doing so has elapsed. Although he has not requested that the Court do so, to the extent that Lombardi addresses the same issues in his own motion for summary judgment, the Court will consider them as responses to any corresponding claims in Sedgwick's motion. As will be discussed, however, to the extent that Lombardi's motion does not address the branch of Sedgwick's motion relating to the counterclaim, the facts stated by Sedgwick therein will be treated as undisputed.

A.      **The Decision to Deny Lombardi Long-Term Disability Benefits.**

Where a benefits plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the reviewing court applies an abuse of discretion standard to the administrator's decision to deny benefits.  *Anderson v. Cytec Industries, Inc.*, 619 F.3d 505, 512 (5th Cir. 2010) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 [1989]).   The abuse of discretion standard is the equivalent of an arbitrary and capricious review.   A decision is arbitrary only if it is "made without a rational connection between the known facts and the decision."   *Anderson*, 619 F.3d at 512 (citations omitted).   Furthermore, a court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere between a continuum of reasonableness-even if on the low end."  *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247 (5th Cir. 2009).

Here, Hewlett-Packard has delegated to Sedgwick "discretionary authority" with "respect to the determination of entitlement to Plan benefits (including initial claims and review of appeals)."  Sedgwick is also empowered to adopt rules and regulations under the Plan and "interpret" the text of the Plan.   Sedgwick also has "the discretionary authority to act with respect to any appeal from a denial of benefits" and the Plan provides that the administrator "processes and reviews claims for benefits . . . ."   Therefore, the Court finds that the Plan gives Sedgwick discretionary authority to determine eligibility and, as such, Sedgwick's decision can be reversed only if it was "arbitrary and capricious."   *Anderson*, 619 F.3d at 512; *see also Curley v. Sedgwick Claims Management Services*, Inc. , No. H-10-117, 2011 WL 3104105, at *5 (S.D.Tex. July 25, 2011) (where, as in the instant case, the Plan gave the administrator the

authority to "process[] and review[] claims," its decision could only be reversed for abuse of discretion).

The Court is of the opinion that Sedgwick's decision to deny Lombardi long-term benefits was not arbitrary and capricious. Under the Plan, Lombardi could qualify for long-term benefits beyond the initial 24-month period only if he were "totally disabled," that is, if he were "continuously unable to perform any occupation for which he is or may become qualified by reason of his education, training or experience." However, a finding of "total disability" is to be based on objective medical evidence. Moreover, the Plan specifically excludes attention deficit disorder, chronic fatigue syndrome, fibromyalgia, and nervous and mental disorders. Therefore, after Lombardi's initial 24-month period of disability ended, Sedgwick notified him that it had reviewed his medical records and determined that he was not "totally disabled," and, therefore, could not continue receiving long-term benefits. Sedgwick noted that Lombardi's complaints of bipolar disorder, depression, fibromyalgia, and chronic fatigue syndrome were specifically excluded under the Plan. Sedgwick also determined that the medical records established that Lombardi's diabetes and high blood pressure were effectively controlled with medication, his photosensitivity complaints were subjective in nature, and his eye pain and sensitivity could not be linked to any objective medical evidence.

Lombardi appealed Sedgwick's decision and provided a "Disability Assessment" report from his physician, Dr. Lourdes Bosquez. In the report, Dr. Bosquez noted that Lombardi suffered from schizophrenia, dissociative episodes, diabetes, and chronic pain, and recommended that he continue on long term disability due to his limited ability to get along with others, his dissociative episodes, daily suicidal ideations, and sadness. In response, Sedgwick hired Dr. Robert Petrie, an independent board-certified specialist in Occupational and Environmental

Medicine. Dr. Petrie spoke with a physician who had treated Lombardi and "thoroughly" reviewed all of Lombardi's medical records.  Dr. Petrie offered some suggestions, including not allowing Lombardi to perform safety sensitive jobs, but, in the end, concluded that there were no physical or other conditions "of such severity to have precluded" Lombardi from functioning in any occupation as of June 2, 2010.  As a result, Sedgwick denied Lombardi's appeal.

Subsequent to the appeal, Sedgwick also obtained an independent evaluation from Dr. Marcus Goldman, a board-certified psychiatrist. Dr. Goldman analyzed Lombardi's medical history, including the report from his treating psychiatrist, and concluded that, from a psychiatric perspective, there was no evidence to support a finding that Lombardi was totally disabled. Based on a review of the record and the independent findings of Doctors Goldman and Petrie, Sedgwick issued a supplemental report recommending that the denial of long-term benefits to Lombardi be upheld.   Therefore, the record establishes that Sedgwick did not abuse its discretion.  *See Anderson*, 619 F.3d at 510, 512 (a decision is arbitrary only if it is "made without a rational connection between the known facts and the decision;" the administrator's decision that the claimant was not "totally disabled" was not arbitrary and capricious where it was based on the findings of independent physicians); *see also Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 401 (5th Cir. 2007); *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 232 (5th Cir. 2004).

Lombardi's claims that Sedgwick deprived him of a full and fair review by failing to fully consider the opinion of his treating physician and by improperly relying on reviews conducted by non-examining physicians, are unpersuasive.  The record establishes that the report from Lombardi's physician was before Drs. Petrie and Goldman, independent physicians, and that both doctors considered and specifically discussed that report in arriving at their conclusions

that Lombardi was not "totally disabled." Therefore, Sedgwick did not "arbitrarily refuse" to consider the opinion of Lombardi's physician. Also, to the extent that Lombardi's complaint appears to be a disagreement between the findings of the independent physicians and that of his own doctor, the Court finds that "in this battle of the experts," the "administrator is vested with discretion to choose one side over the other." *Anderson*, 619 F.3d at 512; *Hamilton v. Standard Ins. Co.*, 404 F. App'x 895, 897 (5th Cir. 2010) (ERISA does not require the administrator to give deference to a treating physician's assessments when confronted with contrary reliable evidence). Similarly, contrary to Lombardi's assertions, Sedgwick was not required to conduct an independent medical evaluation but could rely on paper reviews of Lombardi's records by independent physicians. *See Anderson*, 619 F.3d at 511 (in a case where it found no abuse of discretion, the Fifth Circuit noted that the independent physicians did not personally examine the claimant and reviewed only the medical records in concluding that the claimant was not totally disabled).

Lombardi claims that even though Sedgwick is a third-party claims administrator for Hewlett-Packard, a conflict of interest still exits because the company may have influenced Sedgwick's decision-making process. That argument is not convincing because it is based solely on Lombardi's conclusory allegations. *See e.g., Jurasin v. GHS Property & Gas Ins.Co*., 463 F. App'x 289, 292 (5th Cir. 2012) (*per curiam*) (noting that the claimant's conflict of interest argument was "too theoretical and speculative" for the court to entertain). Lombardi also argues that the definition of "disabled" is similar under the Plan and the SSA and because the latter found him disabled, Sedgwick should have also found him disabled. Lombardi's argument has no merit because the SSA found him disabled based on a "depressive disorder," a disorder that is specifically excluded from coverage under the Plan. In any event, Sedgwick was not bound by

the findings of the SSA. *See Hamilton v. Standard Ins. Co.*, 404 F. App'x 895, 898 (5th Cir. 2010) (*per curiam*) (noting that, because the eligibility criteria for SSA disability benefits differs from that of ERISA plans, an ERISA plan administrator may consider a SSA determination but "it is not bound by it").

Lombardi correctly notes that a claims administrator's failure to discuss the findings of the SSA may, in some circumstances, suggest a "procedural unreasonableness" in the administrator's decision. However, the Court declines to make such finding under the facts of this case because, as discussed, the eligibility requirements for benefits under the Plan are different from the requirements of the SSA. Further, Sedgwick's decision that Lombardi was not "totally disabled" was supported by the findings of two independent physicians. In other words, even if Sedgwick had discussed the findings of the SSA, given the facts of this case, its conclusion that Lombardi was not "totally disabled" would not be impeached.[4] *See Richard v. Fleet Fin. Group Inc. LTD. Employee Benefits Plan*, 367 F. App'x 230 (2nd Cir. 2010) (the court declined to hold that the failure of the administrator to explain why its decision differed from that of the Social Security Administration rendered the administrator's determination arbitrary and capricious).[5]

---

[4] Sedgwick claims that in its August 20, 2010 letter denying Lombardi long-term benefits, it reminded him that it had asked him several times for a copy of the SSA's determination but Lombardi failed to provide it in a timely manner, explaining why Sedgwick did not analyze the SSA's determination in its August 20, 2010 letter. Sedgwick's representations remain undisputed. Although Sedgwick did not mention the determination of the SSA in its subsequent letter denying Lombardi's appeal, as discussed, such a failure, under the facts of this case, did not render Sedgwick's decision arbitrary and capricious.

[5] To the extent that Lombardi relies on *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) to support his proposition that Sedgwick abused its discretion by not discussing the finding of the Social Security Administration in its decision, his argument is unpersuasive. In *Glenn*, the Supreme Court did not find an abuse of discretion based solely on the administrator's failure to discuss the finding of the Social Security Administration; rather, the Court's decision was based on a combination of "serious concerns," which are not present in this case. *See Glenn*, 554 U.S. at 118.
   *Schexnayder v. Hartford Life and Acc. Ins. Co.*, 600 F.3d 465 (2010) is also distinguishable. In *Schexnayder*, the Fifth Circuit found that the decision of the administrator was "procedurally unreasonable" because it failed to address the finding of the SSA, which was in "direct conflict" with the administrator's decision. Based

Having found that Sedgwick's decision to deny Lombardi long-term benefits was not arbitrary and capricious, the Court must also decide whether there is "substantial evidence" to support Sedgwick's determination. *See Corry*, 499 F.3d at 399. Substantial evidence requires "more than a scintilla, less than a preponderance" of relevant evidence. *Anderson*, 619 F.3d at 515. In this case, while Lombardi's psychiatrist recommended that he continue receiving long-term disability benefits, two independent physicians who thoroughly reviewed Lombardi's medical records, disagreed and found that Lombardi was not "totally disabled." Therefore, the Court finds that the opinion of the independent experts constitutes "substantial evidence" supporting Sedgwick's decision to deny benefits. *See Corry*, 499 F.3d at 402; *Anderson*, 619 F.3d at 515.

### B.      Sedgwick's Counterclaim

Sedgwick alleges that it is entitled to "equitable restitution" from Lombardi because he was overpaid in disability benefits. The Court agrees and grants Sedgwick's motion for summary judgment on the counterclaim.

The Plan provides in pertinent part that, in "determining the actual benefits to be paid under the Plan, a Participant's benefit . . . shall be reduced by . . . any income or payments available to or for the benefit of the Participant," from certain other sources, including the SSA. In support of its counterclaim, Sedgwick has produced documents establishing that Lombardi was, at one point, receiving benefits simultaneously from the Plan and the SSA. Sedgwick has also tendered: (1) a contractual Right of Reimbursement form signed by Lombardi in which he

---

on that finding and the fact that the administrator had an inherent conflict of interest, the Court found that the administrator had abused its discretion. Here, by contrast, the SSA found Lombardi disabled based on a "depressive disorder" while the Plan, on the other hand, specifically excludes coverage for "nervous or mental disorders." Therefore, the determinations of Sedgwick and the SSA were not in "direct conflict." Moreover, in this case, there is no inherent conflict of interest because Sedgwick, as the claims administrator, "processes and reviews claims for benefits under the Plan but does not insure benefits."

acknowledges that the Plan may require his employer to "collect any duplicate payments" that he receives from different sources for the same illness; (2) a contractual "Promise to Repay" agreement signed by Lombardi, acknowledging that disability payments under the Plan will be reduced by any amounts which he was paid by the SSA and agreeing to repay the Plan "immediately upon receipt of a Social Security Disability . . . those amounts which were advanced and were subject to the benefit reduction provision of the Plan"; (3) documents explaining Lombardi's overpayment as well as letters notifying him of the overpayment and requesting full reimbursement; and (4) a declaration from Sedgwick's director of Client Services affirming that a search of its internal records establishes that Sedgwick overpaid Lombardi $13,327.41, which Lombardi has not reimbursed.

Lombardi has failed to file a response in opposition to the motion for summary judgment and the time for doing so has elapsed.  Accordingly, pursuant to this Court's local rules and applicable case law, the facts as stated by Sedgwick with respect to its counterclaim will be treated as undisputed.  *See Jegart v. Roman Catholic Church of Houma* . . . , 384 F. App'x 398, 400 (5th Cir. 2010) (*per curiam*) (when a party fails to file an opposition to a motion for summary judgment, the court is permitted to consider the facts listed in support of the motion as undisputed); *see also Eversley v. MBank Dallas*, 843 F.2d 172, 173-174 (5th Cir. 1988).

Under section 502(a)(3) of ERISA, a fiduciary like Sedgwick may bring a civil action "(A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief . . . "  *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 361 (2006).  Therefore, the fiduciary may bring suit to obtain restitution from the beneficiary based solely on "equitable," not legal relief.  *Sereboff*, 547 U.S. at 363.  An action is equitable if the funds sought are "specifically identifiable" and are "within the possession and control of the

beneficiaries." *Sereboff*, 547 U.S. at 362-363; *see also AT & T, Inc. v. Flores*, 322 F. App'x 391, 393 (5th Cir. 2009) (*per curiam*).   According to the Fifth Circuit's three-pronged test, an action is equitable, and therefore proper under section 502(a)(3) of ERISA, if the Plan seeks to recover funds: (1) that are specifically identifiable; (2) that belong in good conscience to the Plan; and (3) that are within the possession and control of the defendant beneficiary.  *See Flores*, 322 F. App'x at 393 (citing *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 356 (5th Cir. 2003)).

Here, Sedgwick has provided uncontroverted evidence establishing that: (1) Lombardi received $13,327.41 in overpayment under the Plan; (2) the overpaid amount, according to the terms of the Plan and the agreements that Lombardi signed, belong to the Plan; and (3) the funds were paid to Lombardi, *i.e.*, they are in his possession.  Therefore, the Court awards Sedgwick the sum of $13,327.41 as overpaid funds.  The Court, however, denies Sedgwick's request for attorneys' fees.

## VI.     Conclusion

Based on the foregoing discussion, the Court grants Sedgwick's motion for summary judgment on the finding that Sedgwick did not abuse its discretion in denying Lombardi long-term benefits, that no genuine issue of material fact exists regarding Sedgwick's counterclaim, and that Sedgwick should recover against Lombardi the sum of $13,327.41 in benefit overpayment.

It is so ORDERED.

SIGNED on this 21st day of November, 2012.

Kenneth M. Hoyt
United States District Judge